1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                           **DISTRICT OF NEVADA**

8  MYREE RUPRACHT, individually and as        )
   Trustee of the ROBERT AND MYREE            )
9  RUPRACHT FAMILY TRUST,                     )       3:07-cv-00231-BES (RAM)
                                              )
10                      Plaintiff,            )
                                              )       **ORDER**
11 v.                                         )
                                              )
12 UNION SECURITY INSURANCE                   )
   COMPANY; GARY T. ARMITAGE; and             )
13 DOES I-X,                                  )
                                              )
14                      Defendants.           )
   _____ )

15

16         Presently before the court is Defendant Gary T. Armitage's ("Armitage") Motion to

17 Compel Arbitration and Motion to Stay Proceedings or in the Alternative, to Dismiss (#5)

18 ("Motion to Compel") filed on May 21, 2007.  Defendant Union Security Insurance ("Union

19 Security") filed a joinder in the Motion to Compel (#5) on June 8, 2007.  Plaintiff Myree D.

20 Rupracht ("Rupracht") filed an Opposition to the Motion to Compel (#16) on June 8, 2007 and

21 Armitage filed a Reply in Support of the Motion to Compel (#29) on June 22, 2007.

22         Additionally before the court is Union Security's Motion to Dismiss Plaintiff's Ninth and

23 Tenth Causes of Action of the Complaint (#4) filed on May 21, 2007.  Plaintiff filed a Response

24 (#17) on June 8, 2007 and Union Security filed a Reply (#26) on June 22, 2007.   On June

25 29, 2007, Plaintiff filed a Motion to Strike Union Security's Reply in Support of Motion to

26 Dismiss (#30).  Union Security filed a Response to the Motion to Strike (#32) on July 3, 2007.

27         A hearing on the motions was held on December 18, 2007.

28 ///

                                             1

1

## I. BACKGROUND

2    Defendant Gary T. Armitage ("Armitage") is a registered representative with ePlanning,

3 a securities broker-dealer.  Armitage has been a registered representative of ePlanning since

4 September of 1999.   Plaintiff Myree Rupracht ("Rupracht") and her late ex-husband Robert

5 Rupracht ("Robert") bought VUL policies through Armitage and ePlanning.  Sales of VUL

6 policies require both insurance licensing and securities licensing and  Armitage claims that the

7 sale of this particular VUL policy was done by him in his capacity as both an insurance agent

8 and a registered representative with ePlanning.  Each VUL policy was issued in the individual

9 names of the Ruprachts, one for Rupracht and one for Robert. However, the Policy Schedule

10 listed the owner of the policies as the Robert and Myree Rupracht Trust.  The policies were

11 issued in or about March of 2000 and became effective in or about June of 2000.

12    After the effective date of the policies,  ePlanning asked all clients to execute a New

13 Account Application and Client Agreement (collectively referred to as the "Account

14 Agreement") in order to maintain their investments with ePlanning representatives.   In

15 February of 2001, Rupracht executed two of these Account Agreements, one for her individual

16 account and one for the Rupracht Restated Family Trust.   Each Account Agreement signed

17 by Rupracht contains a clause that requires the parties to submit to arbitration, any

18 controversy arising between the client and ePlanning or its advisors.  Specifically, upon

19 signing, the client agrees that,

20    "ANY AND ALL CONTROVERSIES ARISING BETWEEN YOU AND
ePLANNING (including ePlanning Advisors, Inc., ePlanning, Inc. and/or any of
21    their control persons, parents, employees, agents, representatives,
predecessors, subsidiaries, affiliates, successors, and assigns), WHETHER
22    ARISING BEFORE OR AFTER EXECUTION OF THIS AGREEMENT, SHALL
BE DETERMINED BY ARBITRATION."

23

24    On April 4, 2007, Rupracht filed a complaint in Washoe County against Armitage and

25 Union Security, the insurance company that procured the VUL policy, alleging causes of action

26 for breach of contract, breach of fiduciary duty, deceptive trade practice, negligence, negligent

27 ///

28 ///

2

1  supervision, fraud and negligent misrepresentation against Armitage.  The complaint and its

2  allegations arise out of the VUL policy and the alleged misconduct by Defendants in relation

3  to the VUL policy.[1]

4                                   **II. ANALYSIS**

5  ***A.      Motion to Compel Arbitration and Stay Proceedings***

6          The Federal Arbitration Act (FAA), allows a defendant to petition the court for an order

7  compelling arbitration. 9 U.S.C. § 4 et. seq.   Under the FAA, the federal courts are to

8  "rigorously" enforce arbitration agreements. Shearson/American Express Inc. v. McMahon, 482

9  U.S. 220, 226 (1987); *see also* Kuehner v. Dickinson & Co., 84 F.3d 316, 319 (9th Cir.1996)

10 (held that the FAA "created a rule of contract construction favoring arbitration").

11         The FAA embodies a "liberal federal policy favoring arbitration agreements." Moses H.

12 Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74

13 L.Ed.2d 765 (1983). Any doubts concerning the scope of arbitrable issues should be resolved

14 in favor of arbitration "whether the problem at hand is the construction of the contract language

15 itself or an allegation of waiver, delay, or a like defense to arbitrability." Id. at 25; see also

16 Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir.2002).

17         The FAA states, "A written provision in ... a contract evidencing a transaction involving

18 commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall

19 be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for

20 the revocation of any contract." 9 U.S.C. § 2.  Here, it is not disputed that the written Account

21 Agreements involve interstate commerce.  Hence, the FAA applies.

22         The district court's role under the FAA is "limited to determining (1) whether a valid

23 agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the

24 dispute at issue." Coleman v. Assurant, Inc., 508 F.Supp.2d 862, 865 (D.Nev. 2007) (citing

25 Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir.2000)).  The FAA

26 "leaves no place for the exercise of discretion by a district court, but instead mandates that

27

28         [1]On May 15, 2007, the Defendants removed the matter to federal court based upon diversity
   jurisdiction.

1 district courts shall direct the parties to proceed to arbitration on issues as to which an

2 arbitration agreement has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213,

3 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).[2]

4        **1.     Whether a Valid Arbitration Agreement Exists.**

5       Rupracht argues that the arbitration clause is not valid because the Account

6 Agreements lacked consideration and were unconscionable.   Specifically, Rupracht argues

7 that the Account Agreements lacked consideration because Rupracht did not receive any new

8 value for signing the Account Agreements after the policies already had been purchased.

9 Rupracht also argues that the arbitration clause found in the Account Agreements is

10 unconscionable and therefore invalid, because Rupracht was in an unequal bargaining

11 position and the contracts' effects are not readily ascertainable.

12       Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable,

13 and enforceable, save upon such grounds that exist at law or in equity for the revocation of

14 any contract." 9 U.S.C. § 2. Hence, "generally applicable contract defenses, such as lack of

15 consideration and mutual assent, may invalidate an arbitration agreement."   Circuit City

16 Stores, Inc. v. Najd, 294 F.3d 1104, 1108 (9th Cir. 2002) citing Doctor's Assocs., Inc. v.

17 Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

18       To determine whether an arbitration agreement is valid, a federal court must apply state

19 contract law. Doctor's Assocs., 517 U.S. at 686-687.  The Nevada Supreme Court has made

20 clear that contract construction rules determine the question of whether a dispute is arbitrable.

21 Kindred v. Second Judicial Dist. Court, 116 Nev. 405, 966, P.2d 903, 907 (2000); quoting

22 Clark Co. Public Employees v. Pearson, 106 Nev. 587, 590, 788 P.2d 136, 137 (1990).

23       ePlanning's Account Agreement clearly states that the signers of the Account

24 Agreement agree to be bound by its terms and that the Account Agreement contains a pre-

25

26     [2]This applies equally to instances where enforcement of the arbitrational issues results in
27 bifurcated proceedings. See Id. at 220-21 (citing Moses H. Cone Mem'l Hosp v. Mercury Const. Co.,
460 U.S. 1, 20 (1983) (concluding that though bifurcation of the proceeding is an unfortunate
28 consequence of enforcement, it "occurs because the relevant federal law requires piecemeal resolution
when necessary to give effect to an arbitration agreement.")).

1  dispute arbitration clause.  This language is immediately above the signature of Rupracht in

2  both of the Account Agreements she signed in February of 2001.  The court finds that

3  Rupracht is bound to the terms of the Account Agreements she signed.

4        Rupracht argues that the arbitration clause is invalid for lack of consideration because

5  the Account Agreements were signed after the insurance policies were in effect.  Armitage

6  counters that consideration was given because all clients were required to execute the

7  Account Agreement in order to maintain their investments with ePlanning representatives.

8  In other words, Rupracht was able to continue using Armitage as her representative in return

9  for executing the Account Agreement.

10        To be valid, a contract must have an offer and acceptance, meeting of the minds and

11  consideration.  May v. Anderson, 119 P.3d 1254, 1257 (2005).  Consideration is not valid

12  unless it is bargained for and given in exchange for an act or promise.  Zhang v. Eighth

13  Judicial Dist. Court of State ex rel. County of Clark, 120 Nev. 1037, 1042, 103 P.3d 20 (2004)

14  (citations omitted).  "[C]onsideration may be any benefit conferred or any detriment suffered."

15  Shydler v. Shydler, 114 Nev. 192, 200, 954 P.2d 37, 42 (1998) (citing Nyberg v. Kirby, 65 Nev.

16  42, 51, 188 P.2d 1006, 1010 (1948).

17        The court finds that Rupracht's argument regarding lack of consideration fails, whether

18  the Account Agreements are characterized as creating a new account or a making a change

19  to an existing account.  A reasonable fact finder could determine that the Account Agreement

20  was intended to be part of the original agreement to purchase the VUL policies.  Alternatively,

21  to the extent the Account Agreement between Armitage and Rupracht would be considered

22  a modification of the existing agreement, Rupracht's decision to continue working with

23  Armitage is sufficient consideration for signing the Account Agreement. Rupracht was free to

24  find a new broker and did not have to stay with Armitage if she did not want to sign the

25  Account Agreements.

26        The question of whether there was adequate consideration in this instance is a close

27  issue, but the FAA embodies a liberal policy favoring arbitration agreements and has "created

28  a rule of contract construction favoring arbitration".  Kuehner, 84 F.3d at 319.  Furthermore,

1  as stated above, any doubts concerning the scope of arbitrable issues should be resolved in

2  favor of arbitration "whether the problem at hand is the construction of the contract language

3  itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone

4  Memorial Hospital, 460 U.S. at 25; Circuit City Stores, 279 F.3d at 892.

5        Rupracht also argues that the arbitration clause is unconscionable and therefore invalid,

6  because Rupracht was in an unequal bargaining position and the contract's effects are not

7  readily ascertainable.  Similar contracts to arbitrate between investment professionals and

8  customers have been upheld.  See, Shearson/American Exp., Inc. v. McMahon 482 U.S. 220,

9  235-238, 107 S.Ct. 2332 (1987); Rodriguez de Quijas v. Shearson/American Exp., Inc., 90

10  U.S. 477, 483, 109 S.Ct. 1917 (1989).   Additionally, there is strong federal policy favoring

11  arbitration and extensive regulatory oversight performed by the SEC in the area and therefore,

12  courts have held that agreements to arbitrate disputes in accordance with SEC-approved

13  procedures are not unconscionable as a matter of law. Cohen v. Wedbush, Noble, Cooke, Inc.

14  841 F.2d 282, 286 (9th Cir. 1988), overruled on other grounds, Ticknor v. Choice Hotels Intern.,

15  Inc., 265 F.3d 931, 936 (9th Cir.2001).

16        Furthermore, the court finds that the arbitration clause is not procedurally

17  unconsionable. While state law contract defenses such as unconscionability, may be applied

18  to invalidate arbitration agreements without contravening § 2 of the FAA, courts may not,

19  however, invalidate arbitration agreements under state laws applicable only to arbitration

20  provisions. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130

21  L.Ed.2d 753 (1995); Perry v. Thomas, 482 U.S. 483, 492, n. 9, 107 S.Ct. 2520, 96 L.Ed.2d

22  426 (1987); Shearson/American Exp., Inc. v. McMahon 482 U.S. 220, 235-238, 107 S.Ct.

23  2332 (1987); Rodriguez de Quijas v. Shearson/American Exp., Inc., 90 U.S. 477, 483, 109

24  S.Ct. 1917 (1989).  By enacting § 2, "Congress precluded States from singling out arbitration

25  provisions for suspect status, requiring instead that such provisions be placed 'upon the same

26  footing as other contracts.'" Doctor's Associates, 517 U.S. at 687, citing Scherk v. Alberto-

27  Culver Co., 417 U.S. 506, 511, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974) (internal quotation

28  marks omitted).

1    Nevada has recognized that insurance contracts are contracts of adhesion but

2 nevertheless refuses to invalidate them solely on that ground.   Nevada permits the

3 enforcement of adhesion contracts where there is "plain and clear notification of the terms and

4 an understanding consent[,]" and "if it falls within the reasonable expectations of the weaker

5 ... party." Burch v. Second Judicial Dist. Court of State ex rel. County of Washoe, 118 Nev.

6 438, 442, 49 P.3d 647, 649 (2002).

7    In the instant matter, Rupracht does not allege that she did not have time to read the

8 one-page New Account Application.  The pre-dispute arbitration clause is identified in the

9 sentences immediately above Rupracht's signature on the New Account Application and is set

10 out in italics.  The language specifically stated that the signatory understood that the Client

11 Agreement contains a pre-dispute arbitration clause in Paragraph 10 and that the Client

12 Agreement was on the reverse side of the New Account Application.    Under these

13 circumstances, the court finds that there was plain and clear notification of the terms of the

14 arbitration clause and that Rupracht had the opportunity to read and review the pre-dispute

15 arbitration clause before consenting to its terms.  As a result, the arbitration clause is not

16 procedurally unconscionable.

17    Generally, both procedural and substantive unconscionability must be present in order

18 for a court to exercise its discretion to refuse to enforce a contract or clause as

19 unconscionable.   Burch, 118 Nev. at 443. As the court has found that procedural

20 unconscionability is not present, it can enforce the arbitration clause without delving into the

21 merits of Rupracht's substantive unconscionability argument.

22    Because the court finds that the Account Agreements do not lack consideration and are

23 not unconscionable, the arbitration clause in the Account Agreements is valid.

24    **2.      Scope of Arbitration Agreement.**

25    As stated above, this court must determine not only whether the arbitration clause is

26 valid, but it also must determine whether the arbitration clause encompasses the dispute at

27 issue.  Rupracht contends that her claims against Armitage do not fall within the scope of the

28 ///

7

1
2
arbitration clause because the subject matter of this litigation, the procurement and handling of the life insurance policy occurred prior to the execution of the arbitration clause.

3
4
5
6
7
8
The New Account Application states that the signatory agrees to be bound by the Client Agreement.   The New Account Application also specifically mentioned that the Client Agreements were located on the back of the same application.   The New Account Application also states that the signatory understands that the Client Agreement contains a pre-dispute arbitration clause.   Paragraph 10 of the Client Agreement states in relevant part, that the signatory agrees that:

9
10
11
> "ANY AND ALL CONTROVERSIES ARISING BETWEEN YOU AND ePLANNING (including ePlanning Advisors, Inc., ePlanning, Inc. and/or any of their control persons, parents, employees, agents, representatives, predecessors, subsidiaries, affiliates, successors, and assigns), WHETHER ARISING BEFORE OR AFTER EXECUTION OF THIS AGREEMENT, SHALL BE DETERMINED BY ARBITRATION."  (emphasis added).

12
13
14
15
16
17
18
19
20
21
22
23
24
25
In construing arbitration clauses, courts should first determine the breadth of the arbitration clause. See, Simula, Inc. v. Autolive, Inc., 175 F.3d 716, 720 (9th Cir.1999); Boston Telco Group v. Deloitte Touche Tohmatsu, 278 F.Supp.2d 1041, 1046-47 (N.D.Cal.2003).  An arbitration clause is broad if it covers "all disputes arising out of a contract" and is a narrow clause if it covers only specific types of disputes. See, Law Offices of Bradley J. Hofland, P.C. v. McFarling, 2007 WL 1074096, *4 (D.Nev.) (D.Nev.,2007); Simula, Inc., 175 F.3d at 720 (interpreting the language"[a]ll disputes arising in connection with this Agreement" broadly); J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir.1988) (finding that the language "[a]ll disputes arising in connection with the present contract shall be finally settled" by arbitration was sufficiently broad in scope to include claims for unfair trade practices, libel, and defamation); McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825, 832 (2d Cir.1988) (noting the distinction between "broad" clauses that purport to refer to arbitration all disputes arising out of a contract and "narrow" clauses that limit arbitration to specific types of disputes).

26
27
28
The present arbitration clause covers all disputes arising before and after the execution of the Account Agreement, placing it in the category of broad arbitration clauses.  With a broad arbitration clause, factual allegations need only "touch matters covered by the contract

containing the arbitration clause, and all doubts are to be resolved in favor of arbitrability." Simula, Inc., 175 F.3d at 721 (citations and internal quotes omitted).

Here, Rupracht's complaint alleged causes of action for breach of contract, breach of fiduciary duty, deceptive trade practice, negligence, negligent supervision, fraud and negligent misrepresentation arising out of the VUL policy.  Specifically, the complaint alleges that after the Account Agreements were signed, Union Security and Armitage failed to monitor one of the VUL's cash value and made poor investment recommendations not suitable for Rupracht. This conduct falls within the arbitration clause because it occurred after the Account Agreements were executed.  Furthermore, the allegations now raised by Rupracht, that the Account Agreements are invalid because they lack consideration and are unconscionable, also fall within the arbitration clause because the acts giving rise to the contracts occurred before execution of the Account Agreement.  Thus, the claims asserted by Rupracht are arbitrable.

### 3.    The Impact of the McCarran-Ferguson Act on the FAA.

Rupracht also contends that the dispute is not arbitrable because the McCarran-Ferguson Act, 15 U.S.C. § 1011-12 (1988), precludes the federal government from interfering with the state regulation of insurance.  Hence, the federal securities laws regarding the arbitration and insurance issues are implicitly preempted by this Act.

The McCarran-Ferguson Act states that federal laws shall not "be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance."  When assessing whether a general federal statute that creates a cause of action "impairs" the operation of a state law, the "proper inquiry is whether the particular suit being brought would impair state law." AmSouth Bank v. Dale, 386 F.3d 763, 781 (6th Cir. 2004) (citing Humana Inc. v. Forsyth, 525 U.S. 299, 311, 313, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999).  The party seeking to avail itself of the McCarran-Ferguson Act must demonstrate that "application of the FAA would invalidate, impair, or supersede a particular state law that regulates the business of insurance." Dehoyos v. Allstate Corp. 345 F.3d 290, 295 (5th Cir. 2003).  In American Heritage Life Insurance Co. v. Orr, 294 F.3d 702, 708 (5th Cir.2002), the Fifth Circuit rejected a challenge to the application of the FAA in an insurance

context stating, "The test under McCarran-Ferguson is not whether a state has enacted statutes regulating the business of insurance, but whether such state statutes will be invalidated, impaired, or superseded by the application of federal law."

Rupracht contends that this language prohibits the FAA from interfering with insurance contracts. For this argument to have any merit in this case, Rupracht must be able to cite to a Nevada state law that the FAA would "invalidate, impair, or supersede." See, 15 U.S.C. § 1011-12 . While Rupracht argues that this is an insurance matter and therefore, is subject to the Insurance Commissioner of the State of Nevada, she failed to set forth any Nevada statute regulating the business of insurance that would be impaired or invalidated by the application of the FAA.  In fact, there are no state statutes preventing arbitration of Rupracht's claims against Armitage, which deal not only with insurance issues, but with security issues as well.

Furthermore, the majority of courts that have addressed the issue, have found that the McCarran-Ferguson Act does not limit the application of the FAA.  Hamilton Life Insurance Co. v. Republic National Life Insurance Co., 408 F.2d 606, 611 (2nd Cir.1969); Miller v. National Fidelity Life Insurance Co., 588 F.2d 185, 187 (5th Cir.1979); American Heritage Life Insurance Co. v. Orr, 294 F.3d 702 (5th Cir.2002).This court is inclined to follow the weight of authority and concludes that the McCarran-Ferguson Act does not preempt the FFA.

### 4.   Application for Stay

"Once the court has determined that a dispute falls within the scope of an arbitration agreement, the proceedings in the case as to the arbitrable issue must be stayed pending the completion of arbitration." Benson Pump Co. v. S. Cent. Pool Supply, 325 F.Supp.2d 1152, 1160 (D.Nev. 2004). Section 3 of the FAA provides in relevant part that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."

The decision to stay the remaining nonarbitrable claims is soundly vested in the court's discretionary authority to control its docket. See, Moses H. Cone, 460 U.S. at 21 n. 23.  In determining whether to stay the remaining nonarbitrable claims a court may take into consideration issues of judicial economy, such as the need to conserve the time and effort of

the court, counsel, and the parties. See Landis v. North American Co., 299 U.S. 248, 254 (1936); Atsa of California, Inc. v. Continental Ins. Co., 702 F.2d 172, 176 (9th Cir.1983).

The court finds that judicial economy would best be served by staying the proceedings against Union Security until the claims involving Armitage have been arbitrated.  The complaint alleges that Armitage was a licensed agent for Union Security and that all acts performed by Armitage were performed within the course and scope of his agency and/or ratified by Union Security.  As such, arbitration might resolve similar questions facing both defendants and may eliminate further litigation in this court. In any case, the arbitrator is likely to decide issues that will, at least, streamline subsequent proceedings before the court. Therefore, the remaining nonarbitrable claims will be stayed pending a determination of the issues submitted to arbitration.

### III. CONCLUSION

IT IS ORDERED that Armitage's Motion to Compel Arbitration and Motion to Stay Proceedings (#5) is GRANTED.

IT IS FURTHER ORDERED that Union Security's Motion to Dismiss Plaintiff's Ninth and Tenth Causes of Action of the Complaint (#4) and Plaintiff's Motion to Strike Union Security's Reply in Support of Motion to Dismiss (#30) are stayed pending resolution of the arbitrable matters.

DATED: This 20th day of December, 2007.

_____

UNITED STATES DISTRICT JUDGE