1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                        **DISTRICT OF NEVADA**

8

MYREE D. RUPRACHT et al.,                    )

9                                             )

            Plaintiffs,                       )

10                                            )        3:07-cv-00231-RCJ-VPC

    vs.                                       )

11                                            )

UNION SECURITY INSURANCE CO. et al.,          )                **ORDER**

12                                            )

            Defendants.                       )

13 _____ )

14          This case arises out of Defendant Union Security Insurance Co.'s ("Union Security")

15  denial of life insurance benefits after the death of Plaintiff Myree D. Rupracht's husband Robert

16  in 2006.  Pending before the Court is Union Security's motion to dismiss the sixth through ninth

17  causes of action.  For the reasons given herein, the Court grants the motion in part, dismissing

18  the ninth cause of action for conversion, but otherwise denies the motion.

19  **I.      FACTS AND PROCEDURAL HISTORY**

20          In March 2000, Rupracht had three life insurance policies (the "Equitable Policies") with

21  Equitable Life Insurance Society ("Equitable"), each worth over $300,000. (*See* First Am.

22  Compl. ¶¶ 9–10, July 11, 2011, ECF No. 57).  That month, Defendant Gary T. Armitage, on

23  behalf of his employer ePlanning, an agent of Defendant Union Security,[1] solicited Rupracht to

24  _____

25          [1]The actual entity at this time was Fortis Benefits Insurance Co. ("Fortis"), but Union
    Security is Fortis's successor-in-interest, (*see id.* ¶ 3), and Plaintiffs refer to Union Security as

purchase life insurance policies (the "Union Security Policies"). (*See id.* ¶¶ 4–5, 9, 11–13). ePlanning has since filed for bankruptcy protection. (*Id.* ¶ 5). Plaintiffs allege that Defendants failed to inform them of the risks associated with the Union Security Policies and falsely represented that the Union Security Policies were appropriate to Plaintiffs' needs and better than the Equitable Policies. (*Id.* ¶ 15).

On or about May 11, 2000, Union Security issued the three Union Security Policies, which had named insureds Robert Rupracht, Jr. (No. 1231284656), Robert M. Rupracht, Sr. and Audrey E. Rupracht (No. 1231284670), and Myree D. Rupracht (No. 1231284653). (*Id.* ¶ 19). Each of the Union Security Policies was for $1 million, with Plaintiff The Robert and Myree Rupracht Family Trust (the "Trust") as the sole beneficiary. (*Id.* ¶ 21). Armitage had the authority as trustee to invest and transfer monies between the Union Security Policies to ensure payment of the premiums for at least ten years after Plaintiffs deposited the corpus. (*See id.* ¶¶ 22–23).

Union Security refused to insure Robert Jr. at "non tobacco rates" because his urine sample indicated cigarette use within the previous twelve months, despite his denial of such use on his application. (*See id.* ¶¶ 17, 20). Robert Jr. completed a second application on July 16, 2001 in order to obtain non tobacco rates, and he denied having used cigarettes or any other tobacco or nicotine products in the previous twelve months. (*Id.* ¶¶ 25–28). He also submitted another blood sample and gave Union Security permission to access to his medical records. (*Id.* ¶ 29). On Armitage's recommendation, Union Security issued Robert Jr. a new policy with the same policy number, but for $500,000. (*Id.* ¶ 30). Plaintiffs do not note whether the new policy was at non tobacco rates. (*See id.*). After a third application, Union Security issued

---

the actor even with respect to the time before it obtained Fortis's interest. Plaintiffs allege Fortis and Union Security are jointly and severally liable, but they have never named Fortis as a Defendant and do not allege Fortis's past or present corporate relationship to Union Security.

1   Robert Jr. another new policy with the same policy number, again for $500,000, but Plaintiffs

2   again do not note whether that policy was at non tobacco rates. (*See id.* ¶¶ 31–33). Both the

3   second and third policies were issued on November 20, 2002. (*See id.* ¶¶ 30, 33).

4         On or about July 14, 2003, Union Security advised Plaintiffs that the corpus on the

5   Robert Jr. Policy had fallen below the levels required to continue to pay the premiums and keep

6   the guaranteed death benefit ("GDB") in force, which result was contrary to a contractual

7   provision that no premium would be due for the first ten policy years of the GDB. (*Id.* ¶¶ 34–35).

8   Armitage advised Plaintiffs to allow the GDB to lapse. (*Id.* ¶ 36). A September 30, 2004 policy

9   statement from Union Security indicated that the Robert Jr. Policy had a value of only

10  $18,988.30, and on October 11, 2004, Union Security informed Plaintiffs that the policy was in

11  default and had lapsed as of that date. (*Id.* ¶¶ 37–38). On October 24, 2004, Armitage sent

12  Robert Jr. a reinstatement form, which Robert Jr. completed on or about November 4, 2004.

13  (*Id.* ¶¶ 39–40). Robert Jr. answered question 24 in part by stating that he did not currently use

14  tobacco in any form, but he did not answer the part of the question that asked whether he had

15  ever smoked cigarettes, how many per day, or when he quit. (*See id.* ¶¶ 40–41). Plaintiffs paid

16  $3219.25 to Union Security to reinstate the Robert Jr. Policy. (*Id.* ¶ 42). Plaintiffs allege that

17  Defendants failed adequately to monitor the Robert Jr. Policy's cash value, made poor

18  investment decisions that depleted the Robert Jr. Policy's cash value, failed to notify Plaintiffs of

19  the default of the Robert Jr. Policy in accordance with that policy's contractual requirements, and

20  failed to maintain the Robert Jr. Policy in force by transferring available funds under the other

21  two Union Security Policies to make the premium payments on the Robert Jr. Policy, which was

22  within their power to do, was their duty, and which Plaintiffs specifically directed them to do.

23  (*See id.* ¶¶ 43–47).

24        On or about February 28, 2006, Robert Jr. died of atherosclerotic cardiovascular disease.

25  (*Id.* ¶ 52). Mylee Rupracht made a claim for benefits under the Robert Jr. Policy on March 15,

1  2006 as trustee of the beneficiary, the Trust. (*Id.* ¶ 54).  After sending its agent Armitage eleven

2  questions concerning the reinstatement of the Robert Jr. Policy, Union Security denied the claim

3  on August 9, 2006 with the following explanation: "Had we known of Robert's cigarette

4  smoking and his admission to Sierra Nevada HCS, the Reinstatement Application would have

5  been declined.  Consequently, the policy is being rescinded and there is no benefit payable." (*See*

6  *id.* ¶¶ 56–58).  Union Security returned $10,000 in premiums that had been paid on the Robert Jr.

7  Policy, which was $127,139.23 less than the total premiums paid on the Robert Jr. Policy since

8  first issuance on June 11, 2000 and $39,911.80 less than the premiums paid on the Robert Jr.

9  Policy since the disputed reinstatement in November 2004. (*Id.* ¶¶ 59–66).  Plaintiffs demanded

10  that Union Security pay the claims, but Union Security refused. (*Id.* ¶¶ 67–68).

11      In 2007, Rupracht sued Union Security and Armitage in state court on her own behalf

12  and as trustee of the Trust on ten causes of action.  Defendants removed.  The Hon. Brian E.

13  Sandoval compelled arbitration between Rupracht and Defendant Gary T. Armitage and stayed

14  Union Security's Motion to Dismiss (ECF No. 4) and Plaintiffs' Motion to Strike Union

15  Security's Reply in Support of Motion to Dismiss (ECF No. 30).  Plaintiffs recently asked the

16  Court to lift the stay because Armitage failed to participate in arbitration, filed for Chapter 7

17  bankruptcy, and is now incarcerated in California pending a criminal trial for fraud.  Union

18  Security did not oppose Plaintiffs' motion and filed its own motion for leave to refile its previous

19  motion to dismiss, because the pleading standards under Rule 8(a) had changed in the meantime.

20  The Court granted both motions.  Plaintiffs then requested leave to file the First Amended

21  Complaint ("FAC"), and the Court granted leave.  Plaintiffs filed the FAC, asserting nine causes

22  of action: (1) Declaratory Judgment; (2) Breach of Contract; (3) Breach of the Duty of Good

23  Faith and Fair Dealing; (4) Negligent Supervision; (5) Accounting; (6) Fraud; (7) Negligent

24  Misrepresentation; (8) Unjust Enrichment; and (9) Conversion.  Union Security has filed a

25  motion to dismiss the sixth though ninth causes of action for failure to state a claim.

1    **II.    LEGAL STANDARDS**

2         Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

3    claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

4    what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47

5    (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

6    that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule

7    12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720

8    F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for

9    failure to state a claim, dismissal is appropriate only when the complaint does not give the

10    defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*

11    *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is

12    sufficient to state a claim, the court will take all material allegations as true and construe them in

13    the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th

14    Cir. 1986).  The court, however, is not required to accept as true allegations that are merely

15    conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

16    *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action

17    with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation

18    is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*,

19    550 U.S. at 555).

20         "Generally, a district court may not consider any material beyond the pleadings in ruling

21    on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the

22    complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*

23    *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents

24    whose contents are alleged in a complaint and whose authenticity no party questions, but which

25    are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)

motion to dismiss" without converting the motion to dismiss into a motion for summary

judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule

of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*

*Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court

considers materials outside of the pleadings, the motion to dismiss is converted into a motion for

summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th

Cir. 2001).

**III.    ANALYSIS**

    **A.    Misrepresentation**

The elements of common law fraud or intentional misrepresentation in Nevada are:

1. A false representation made by the defendant;

2. Defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation);

3. Defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation;

4. Plaintiff's justifiable reliance upon the misrepresentation; and

5. Damage to the plaintiff resulting from such reliance.

*Bulman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992).  Negligent misrepresentation is

similar:

> Under Nevada law, a claim for negligent misrepresentation requires a plaintiff to plead: 1) a representation that is false; 2) that the representation was made in the course of the defendant's business or in any action in which he has a pecuniary interest; 3) the representation was for the guidance of others in their business transactions; 4) the representation was justifiably relied upon; 5) that such reliance resulted in pecuniary loss to the relying party; and 6) that the defendant failed to exercise reasonable care or competence in obtaining or communicating the information.

*G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*, 460 F. Supp. 2d 1246, 1262 (D. Nev.

2006) (Ezra, J.).  Furthermore, under Rule 9(b), circumstances constituting misrepresentation

must be stated with particularity. Fed. R. Civ. P. 9(b).  A Plaintiff must plead with particularity

the circumstances of the alleged misrepresentation(s). *See Reese v. BP Exploration (Alaska) Inc.*,

643 F.3d 681, 690 (9th Cir. 2011).

Plaintiffs allege that "ARMITAGE AND UNION SECURITY represented to

RUPRACHT that the variable life insurance ARMITAGE would obtain for RUPRACHT with

UNION SECURITY was appropriate for their needs, would fully insure them a [sic] better than,

[sic] the policies of life insurance that RUPRACHT maintained with EQUITABLE . . . ."

(Compl. ¶ 15).  The Court infers that Plaintiffs mean to allege that Armitage made these

representations to Mylee Rupracht.  They also allege that "RUPRACHT is informed and believes

that UNION SECURITY made false representations which UNION SECURITY and each of

them [sic] knew or believed was [sic] false which UNION SECURITY had insufficient basis for

making.  UNION SECURITY made and/or ratified the false representations made by its

disclosed agents . . . ." (*Id.* ¶ 102).  It appears that Plaintiffs mean to allege that Union Security

made such statements to Armitage with the knowledge and intent that he would pass them on to

Plaintiffs and that Plaintiffs would rely on them, or that Union Security at a minimum ratified

Armitage's statements after it learned of them by issuing the Union Security Policies without

correcting the misrepresentations.  Plaintiffs allege that the Union Security Policies could require

premium payments that would be difficult to make if the investments did not prosper and that the

policies could jeopardize the value of the Equitable Policy because of an inability to pay

premiums on the Union Security Policies. (*Id.* ¶¶ 109, 116–17).  The Court finds that Plaintiffs

have sufficiently pled intentional and negligent misrepresentation against Union Security.

### B.    Unjust Enrichment

Plaintiffs have sufficiently alleged unjust enrichment.  They have alleged that they

conferred a benefit upon Union Security in the form of insurance premiums totaling $137,139.23

since June 11, 2000 and $49,911.80 since November 4, 2004, that Union Security appreciated the

benefit by accepting the funds, and that after Union Security rescinded the relevant policy based on alleged misrepresentations on the application, thereby voiding the policy, it refused to return more than $10,000. Taking the facts to be true as alleged, these allegations state a claim for unjust enrichment. *See Topaz Mut. Co., Inc. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992) ("[T]he essential elements of unjust enrichment 'are a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit.'" (quoting *Unionamerica Mortg. & Equity Trust v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981))).

Whether the allegations are true, and whether the alleged unjust enrichment extends to June 2000 or only to November 2004 is not clear at this stage, but assuming the facts are as Plaintiff has alleged, Union Security was not entitled arbitrarily to return only $10,000. Plaintiffs argue convincingly that Union Security cannot rescind a policy and then attempt to use the prior existence of the policy as a shield against an unjust enrichment claim. Of course, Plaintiffs cannot recover the same damages twice for an alleged breach and also for unjust enrichment, but the theory is a viable alternative claim. For example, if Union Security's rescission of the reinstated policy was legitimate but voided only the post-reinstatement policy and not the previous, "severable" policies, as Union Security argues, it may be that failure to return premiums paid *before* the November 2004 reinstatement is actionable under a breach theory only, whereas failure to return premiums paid *after* the November 2004 reinstatement is actionable under an unjust enrichment theory only. Union Security claims in its motion that $10,000 is in fact the total amount of premiums Plaintiffs paid on the policy after reinstatement in November 2004. But this is a factual dispute. Also, it is not clear yet that the rescission was legitimate. If the Court determines it was not and that the policy remained in force until Robert Jr.'s death, the breach theory would apply to the entire alleged overpayment, and an unjust enrichment theory would not apply to any portion of the overpayment. At this stage, unjust enrichment will not be

1    dismissed as an alternative theory of relief.

2        **C.    Conversion**

3        Union Security argues that as a matter of law only tangible property can be converted, and

4    only by a physical taking away of the property.  Plaintiffs argue that the Nevada Supreme Court

5    has approved a conversion theory based on the taking of intangible funds.  The first case Plaintiffs

6    cite does not quite support this contention, because the Court in that case simply affirmed a

7    verdict of conversion based on the taking of physical stock certificates from a safe deposit box,

8    which is more akin to taking cash or some other physical manifestation of funds as opposed to

9    making an unauthorized transfer of funds in a bank account.  *See Evans v. Dean Witter Reynolds,*

10   *Inc.*, 5 P.3d 1043, 1046 (Nev. 2000).  The case does, however, support the contention that

11   damages for conversion are measured by the practical value of what is taken, regardless of the

12   value of the physical object.  *See id.* ("Appellants allege that the value of the stock certificates at

13   the time of the deposit exceeded $8,000,000.00.  The valuation at that time was largely

14   uncontested at trial.").  Certainly, it was not $8 million worth of paper alleged to have been taken

15   in that case, but a few cents worth of paper representing the right to $8 million in stock.  The

16   second case Plaintiffs cite is unreported.  The third case Plaintiffs cite also supports Plaintiffs'

17   contention that intangible property can be converted, but it does not fully support their contention

18   that there need be no physical taking at all because it simply refers to the result in *Evans*.  *See*

19   *M.C. Multi-Family Dev., L.L.C. v. Crestdale Assocs., LTD.*, 193 P.3d 536, 543 n.11 (Nev. 2008)

20   (citing *Evans*, 5 P.3d at 1048 n.7).  The fourth case Plaintiffs cite supports a finding of conversion

21   where a trustee refuses to return money given to him in trust.  *See Larson v. B.R. Enters., Inc.*, 757

22   P.2d 354, 355–56 (Nev. 1988).  But the present case concerns money paid for services (insurance

23   coverage) not rendered, not money entrusted to another as in *Larson*.  Such money is not, as

24   Plaintiffs argue, specifically identifiable.  It is intermingled with premiums paid by Union

25   Security's other customers.  Plaintiffs also note that conversion requires only general intent, not

1   bad intent, and that mistakes and good faith are inapposite. *See Evans*, 5 P.3d at 1048.  Plaintiffs

2   also note that conversion requires no manual taking, so long as one makes an unjustified claim to

3   ownership of specifically identifiable property. *See Bader v. Cerri*, 609 P.2d 314, 317 n.1 (Nev.

4   1980).

5         Ultimately, Plaintiffs base the conversion claim on the allegation that Union Security has

6   refused to return the premium payments on the rescinded policy.  But Plaintiffs do not allege that

7   Union Security ever performed any act to take the policy payments from Plaintiffs.  Rather,

8   Plaintiffs allege that they willfully paid the premiums, and that Union Security now unjustly

9   refuses to return them after rescinding the policy.  This claim sounds in unjust enrichment.  It is

10  the alleged unjust retention of benefits bestowed, not the taking of another's property.  Although

11  conversion requires no wrongful intent or physical taking, it does require a volitional act beyond a

12  mere omission, unless there is an affirmative duty to care for and return specific property such as

13  in the trust relationship in the *Larson* case.  Under the present facts, a conversion claim is

14  redundant with an unjust enrichment claim.  The court will therefore dismiss the conversion

15  claim.

16                                  **CONCLUSION**

17        IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 59) is GRANTED in

18  part and DENIED in part.  The conversion claim is dismissed, but the misrepresentation claims

19  and the unjust enrichment claim may proceed.

20        IT IS SO ORDERED.

21  Dated this 7th day of  December, 2011.

22                                _____

23                                ROBERT C. JONES
                               United States District Judge

24

25